# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| SETH HACKLER, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 221-CV-019 |
| | ) | |
| GENERAL MOTORS LLC | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant General Motors, LLC ("GM")'s Motion to Dismiss.  Dkt. No. 14.  The motion has been fully briefed and is ripe for review.  Dkt. Nos. 30, 41, 46-49.  For the reasons stated below, Defendant's motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND[1]

Plaintiff Seth Hackler ("Plaintiff") brings this case before the Court as a putative class action against General Motors LLC ("Defendant").  Dkt. No. 1.  Plaintiff asserts all claims on behalf

---

[1] For the purposes of ruling on Defendant's Motion to Dismiss, the Court takes Plaintiff's version of the facts as true.  Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007) ("[W]hen ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true.").

of a Florida statewide class and a nationwide class, as discussed below.  Id.

This case materially resembles similar class-action lawsuits that have been litigated in other district courts across the country.  Plaintiff even submits in his response that his allegations are materially identical to those asserted in Sloan v. General Motors LLC, No. 3:16-cv-07244, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017).  Dkt. No. 30 at 2.

Plaintiff, who is domiciled in Brunswick, Georgia, is the owner of a 2013 Chevrolet Silverado, which is equipped with a Generation IV 5.3 Liter V8 Vortec 5300 Engine ("Gen IV Engine").  Dkt. No. 1 ¶¶ 1, 25-26.  Plaintiff purchased his Silverado new in April 2013 from Palm Chevrolet in Ocala, Florida.  Id. ¶ 26.

Defendant designed the Gen IV Engine that is installed in Plaintiff's vehicle as well as other General Motors Corporation ("GMC") and Chevrolet vehicle models manufactured in 2011-2014.  Id. ¶¶ 1-2.

Plaintiff's vehicle consumed an excessive amount of oil at least as early as 2018, when it had approximately 80,000 miles on the odometer.  Id. ¶ 27.  Due to excessive oil consumption, Plaintiff's vehicle has experienced repeated spark plug fouling and blown gaskets.[2]  Id. ¶ 28.  Plaintiff alleges that the problems

---

[2] Plaintiff does not indicate any specific instance where such issues occurred.

he experienced with his engine were caused by "an inherent defect in each of the Class Vehicles," which he describes as the "Oil Consumption Defect." Id. ¶ 7. Simply put, Plaintiff alleges that the engine's piston rings[3] fail to keep oil in the crankcase. Defendant intends for its piston rings to last well over 100,000 miles, yet Defendant saw the piston rings in the Gen IV Engine wear out in as few as 30,000 miles. Id. ¶¶ 48-49. Plaintiff also contends that Defendant implemented a defective oil life monitoring system in the Class Vehicles that fails to advise drivers of insufficient oil in their vehicles until those levels are critically low, exacerbating the Oil Consumption Defect. Id. ¶ 11.

The Oil Consumption Defect affects numerous critical engine components and can cause issues with drivability, including "lack of power from misfire, spark plug fouling, excessive engine noise, abnormal vibration or shaking, piston cracking, head cracking, and, ultimately, engine seizure." Dkt. No. 1 ¶ 15. These engine issues can potentially put occupants at risk, as "the Class Vehicles become stranded in hazardous traffic conditions, dangerous weather conditions and/or remote locations." Id. ¶ 14.

---

[3] Piston rings ensure there is a seal between the piston and the cylinder. Dkt. No. 1 ¶¶ 8-9. If the contact is not solid, it is likely that fuel is migrating outside of the cylinder and being used inefficiently.

According to Plaintiff, Defendant was aware of the Oil Consumption Defect as early as 2008 but failed to disclose it to consumers prior to the purchase or lease of their Class Vehicles. Id. ¶¶ 95, 177.  Specifically, Plaintiff contends that Defendant touted the safety and dependability of the Class Vehicles but never informed Plaintiff or other class members of the Oil Consumption Defect.  In support of his allegation that GM had knowledge about the oil consumption defect, Plaintiff highlights the following facts: (1) Defendant ultimately switched over to more durable material in its piston rings for the Gen V Engine design, id. ¶ 64, (2) many consumers complained about excessive oil consumption to the National Highway Traffic Safety Administration ("NHTSA") and on online websites such as carcomplaints.com, id. ¶¶ 124, 127, and (3) GM issued multiple Technical Service Bulletins ("TSBs") to its dealers, which explicitly addressed the issue of excessive oil consumption in Gen IV Engines, id. ¶¶ 70, 119-20.  Plaintiff alleges that the TSBs suggested fixes that Defendant's engineers knew were ineffective.  Id. ¶ 174.  Despite its knowledge, Plaintiff maintains that Defendant never disclosed the Oil Consumption Defect to consumers.  Instead, Defendants "repeatedly told consumers that the Class Vehicles were dependable, long-lasting, and of the highest quality."  Id. ¶¶ 150-51.

Prior to purchasing his 2013 Silverado, Plaintiff spoke with a sales representative at Palm Chevrolet, saw commercials for the

2013 Chevrolet Silverado that promoted the truck's reliability and durability, and saw a Monroney sticker[4] on the vehicle at the time of purchase. Dkt. No. 1 ¶ 30. Plaintiff alleges that he would not have purchased his vehicle, or paid as much for it as he did, had he known of the Oil Consumption Defect. Id. ¶ 32.

Plaintiff's complaint alleges violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I), breach of express warranty (Count II), fraudulent concealment/omission (Count III), and unjust enrichment (Count IV), and violation of the Magnuson-Moss Warranty Act (Count V). Id. The parties agree that Plaintiff's claims are governed by Florida law. Dkt. No. 14 at 1. Plaintiff filed its lawsuit in this Court, and the Court has diversity jurisdiction under 28 U.S.C. § 1332.

Pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, Defendant moved to dismiss all of Plaintiff's claims. Dkt. No. 14. For the following reasons, Defendant's Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

---

[4] A Monroney sticker is a label required in the United Stated to be displayed in all new automobiles that includes the listing of certain official information about the car, including engine and transmission specifications, pricing, fuel economy metrics, greenhouse gas emissions and other important information. See The Automobile Information Disclosure Act of 1958, Pub. L. 85-506, Jul. 7, 1958, 72 Stat. 325, 15 U.S.C. §§ 1231-1233.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  The court need not "accept as true a legal

6

conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

Lastly, the Court notes that exhibits attached to pleadings become part of a pleading.  Fed. R. Civ. P. 10(c).  Consequently, a court may consider documents attached to a complaint as exhibits in resolving a motion to dismiss without converting the motion to one for summary judgment.  <u>Taylor v. Appleton</u>, 30 F.3d 1365, 1368 n.3 (11th Cir. 1994).

**DISCUSSION**

In its Motion to Dismiss, GM argues that each of Plaintiff's five counts fails to state a claim for relief.  <u>See</u> Dkt. No. 14. GM is correct as to Counts II-V, but Count I is not subject to dismissal at this time.  For the following reasons, GM's Motion to Dismiss is **DENIED** as to Count I and **GRANTED** as to Counts II-V.

### I.   Count I — FDUTPA

Defendant moves to dismiss Plaintiff's FDUTPA claim because 1) it is time-barred under FDUTPA's four-year statute of limitations, and 2) it does not meet Rule 9(b)'s heightened pleading requirements which demand that fraud claims be pled with particularity.  Dkt. No. 14 at 14-15.  In response, Plaintiff insists that 1) the statute of limitations was tolled due to evidence of concealment, and 2) Rule 9(b) does not apply to FDUTPA claims and, even if it does, that he has sufficiently alleged

Defendant's knowledge of the Oil Consumption Defect so as to satisfy Rule 9(b)'s notice requirements.  Dkt. No. 30 at 16-18.

The Court concludes that Plaintiff shows sufficient evidence of concealment, such that the statute of limitations was tolled. Further, the Court concludes because Plaintiff's FDUTPA claim involves fraud or misrepresentation, Rule 9(b)'s heightened pleading requirements apply.   However, because Plaintiff's complaint contains specific allegations to satisfy Rule 9(b)'s requirements, Defendant's Motion to Dismiss is **DENIED** for this claim.

### a. Plaintiff's Claim is not Time-Barred.

As an initial matter, a statute of limitations bar is "an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004) (brackets and ellipses omitted).  Thus, a motion to dismiss under Rule 12(b)(6) based on an affirmative defense will not be granted unless it is "'apparent from the face of the complaint' that the claim is time-barred." Id. (citation omitted).

Here, FDUTPA's statute of limitations for claims is four years, which starts to run from the time of purchase.  See Speier-Roche v. Volkswagen Grp. Of Am. Inc., No. 14-20107-CIV, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014).  Plaintiff bought his Class Vehicle in April 2013, but did not bring the instant suit

until February 2021—seven years, ten months later.  See Dkt. No. 1.  As such, Defendant argues it is clear from the face of the complaint that Plaintiff's claim is time-barred.  Dkt. No. 14 at 15.

However, under Florida law, fraudulent concealment can toll the statute of limitations for a claim when the plaintiff shows "(1) successful concealment of the cause of action; (2) fraudulent means to achieve that concealment and (3) that the plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim."  Razor Corp., LLC v. CMAX Fin., LLC, No. 17-civ-80388, 2017 WL 3481761, at *4 (S.D. Fla. Aug. 14, 2017) (citing Berisford v. Jack Eckerd Corp., 667 So. 2d 809, 811-12 (Fla. DCA 1995)).  "The Eleventh Circuit has explained that '[f]raudulent concealment requires the defendants to engage in the willful concealment of the cause of action using fraudulent means to achieve that concealment.'"  Id. (quoting Raie v. Cheminova, Inc., 336 F.3d 1278, 1282 n.1 (11th Cir. 2003)).

Plaintiff argues that his complaint shows GM engaged in fraudulent concealment by "prevent[ing] the true cause and inherent nature of the Oil Consumption Defect from being publicly revealed, and prevent[ing] Plaintiff from discovering his claim."  Dkt. No. 30 at 18 (citing Dkt. No. 1 ¶ 178).  Plaintiff's complaint first shows GM conducted an investigation of its own to discover the root cause of the Oil Consumption Defect, dubbed the "Red X"

investigation.  See Dkt. No. 1 ¶¶ 95-123.  This investigation uncovered the faulty piston rings and showed GM's knowledge of the Oil Consumption Defect as early as 2009.  Id. ¶ 111.  This report was deemed "[c]onfidential—not to be produced for distribution outside of General Motors[.]"  Id. ¶ 114.  This non-disclosure, by itself, would not be enough to show fraudulent concealment.  See Fisher v. Harley-Davidson Motor Grp. LLC, No. 19-CV-14154, 2019 WL 8014364, at *2-3 (S.D. Fla. Oct. 18, 2019) ("the 'fraudulent means' alleged must go beyond mere non-disclosure").

However, Plaintiff points to affirmative acts by GM in concealing the Oil Consumption Defect.  Plaintiff specifically points to the TSBs, arguing that these are affirmative acts by the Defendant which concealed the true nature of the Oil Consumption Defect.  Dkt. No. 1 ¶ 114; see also Dkt. No. 46 at 4.  Taking Plaintiff's allegations as true, his complaint shows Defendant's TSBs affirmatively concealed the nature of the Oil Consumption Defect from the public, thereby preventing Plaintiff from discovering the nature of the defect that is otherwise nearly impossible for Plaintiff to discover by himself.  See Dkt. No. 1 ¶ 70 (stating, for example, that TSB# 10-06-001 recognized "piston and ring replacement is the ultimate fix," yet instructed dealers to install a deflector that "fails to address the fundamental problem of the defective piston rings, and thus does not resolve the Oil Consumption Defect.").  Plaintiff shows Defendant

"direct[ed] its service centers to perform, upon receiving complaints of oil consumption, a series of 'band-aid' fixes that GM knew to be ineffective." Dkt. No. 46 at 4 (citing Dkt. No. 1 ¶¶ 119-23, 172-74, 177-83).

These facts are enough, at this stage of litigation, to establish the statute of limitations was tolled due to fraudulent concealment. Thus, Defendant's motion to dismiss is **DENIED** on this ground.

### b. Plaintiff's Claim Must (and Does) Satisfy Rule 9(b)'s Heightened Pleading Standards.

Defendant next argues that Plaintiff's FDUTPA claim must be dismissed because it does not allege facts necessary to satisfy Rule 9(b)'s heightened pleading standards. Dkt. No. 14 at 14. FDUTPA forbids "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Fla. Stat. § 501.204(1). "The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Carriuolo v. Gen. Motors Co., 823 F.3d 977, 983 (11th Cir. 2016) (citing City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. DCA 2008)). To determine whether an act is deceptive or unfair, Florida law employs an objective test: whether "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances," rather than "actual

11

reliance on the representation or omission at issue." Id. at 983–84 (quotations omitted).

While the Eleventh Circuit has never directly addressed whether FDUTPA claims are subject to rule 9(b), it has indicated that FDUTPA's "proscription against unfair and deceptive acts and practices sweeps far more broadly than the doctrine of fraud [.]" Hetrick v. Ideal Image Dev. Corp., 372 F. App'x 985, 992 (11th Cir. 2010).

District courts in the Eleventh Circuit are split as to whether a FDUTPA claim must meet the heightened pleading standard of Rule 9(b). One line of cases holds that Rule 9(b) applies to the extent the FDUTPA claim at issue sounds in fraud. See, e.g., Llado-Carreno v. Guidant Corp., No. 09-cv-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb 22, 2011); Perret v. Wyndham Vacation Resorts, Inc., 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012); Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd., No. 10-CIV-22153, 2011 WL 4434891, at *5 (S.D. Fla. Sep. 23, 2011). Another line of cases holds that the requirements of Rule 9(b) do not apply to claims under FDUTPA. See, e.g., FTC v. Student Aid Center, Inc., 281 F. Supp. 3d 1324, 1333 (S.D. Fla. 2016); Toback v. GNC Holdings, Inc., No. 13-cv-80526, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013); Harris v. Nordyne, LLC, No. 14-cv-21884, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 13, 2014).

This Court agrees with the first line of cases and finds that Rule 9(b) is the operative pleading standard for a FDUTPA claim if, as alleged here, it sounds in fraud.  See Vazquez v. Gen. Motors, LLC, No. 17-22209-CIV, 2018 WL 447644, at *6 (S.D. Fla. Jan. 16, 2018).  Where the "gravamen of the claim sounds in fraud," the plain language of Rule 9(b) requires a heightened pleading standard.  Id.  Here, Plaintiff alleges that Defendant defrauded its customers by actively concealing the Oil Consumption Defect as Plaintiff prepared to purchase his vehicle.  See Dkt. No. 1 ¶ 30. Such allegations are based in fraud, and thus Plaintiff must satisfy 9(b)'s heightened pleading requirements to put Defendant on notice of the precise misconduct Plaintiff alleges.

Rule 9(b) requires a plaintiff to alert "defendants to the 'precise misconduct with which they are charged' and protect[s] defendants 'against spurious charges of immoral and fraudulent behavior.'"  Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).  Rule 9(b) is satisfied if the complaint states:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

13

Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation marks omitted).

The Court finds that Plaintiff has satisfied Rule 9(b)'s pleading requirements. Plaintiff alleges numerous specific representations made by GM, offers a specific time frame for when these representations were made, and identifies specific marketing materials upon which Plaintiff relied in deciding to purchase his vehicle from Defendant. See, e.g., Dkt. No. 1 ¶¶ 30, 64, 70, 95, 119-124. "[U]nder FDUTPA, the plaintiff must only establish three *objective* elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Carriuolo, 823 F.3d at 985 (emphasis in original). Plaintiff has thus satisfied Rule 9(b)'s requirements at this stage of litigation.

Defendant's cited authority, Shea v. General Motors, LLC,[5] is unavailing. The court in Shea analyzed the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3(a), which requires actual reliance upon the alleged deceptive act. See No. 3:21-cv-86, 2021 WL 4804171, at *8; see also Roger v. Ariz. RV Ctrs., LLC, 515 F. Supp. 3d 915, 944-45 (N.D. Ind. Jan. 26, 2021). FDUTPA claims, on the other hand, merely require objective causation. See Carriuolo, 823 F.3d at 984; see also Davis v. Powertel, Inc., 776 So. 2d 971, 973 (Fla. DCA 2000) ("A party asserting a deceptive

---

[5] No. 3:21-CV-86-DRL-MGG, 2021 WL 4804171 (N.D. Ind. Oct. 14, 2021).

trade practice claim need not show actual reliance on the representation or omission at issue."). As such, Shea and Ind. Code § 24-5-0.5-3(a) are distinguishable from the case and statute at hand.

Having found Plaintiff's pleadings satisfy the Rule 9(b) heightened pleading requirements, Defendant's Motion to Dismiss is **DENIED** on this ground.

**II.  Count II — Breach of Express Warranty**

Defendant next seeks to dismiss Plaintiff's claim for breach of express warranty, contending it fails on two grounds. First, Defendant argues that the express warranty applies only to defects in "materials or workmanship," which, Defendant contends, excludes design defects such as the Oil Consumption Defect. Dkt. No. 14 at 5. Second, Defendant argues that even if the defect was within the scope of the warranty, Plaintiff cannot succeed on a claim for breach of warranty because he has failed to allege an essential element of a breach of warranty claim under Florida law—that he sought and was denied repairs during the warranty term. Id. at 7; see Ocana v. Ford Motor Co., 992 So.2d 319, 323 (Fla. DCA 2008). Plaintiff responds that the Oil Consumption Defect is best characterized as a defect in materials[6], and even if it is a design

---

[6] Manufacturing defects are commonly described as defects in "materials or workmanship." See, e.g., Bruce Martin Constr., Inc. v. CTB, Inc., 735 F.3d 750, 753-54 (8th Cir. 2013) ("Thus, case law supports the view that, where a product is manufactured correctly but designed inappropriately, the defect is one of design and not 'material or

defect, that the warranty covers design defects and further that he did not need to seek repairs because the warranty "failed of its essential purpose."  Dkt. No. 30 at 5, 7-9.

Defendant has the better of these arguments.  The defect here is best characterized as a design defect, not a manufacturing defect.  And while the Court concludes that the warranty here covers design defects, Plaintiff has not alleged that Defendant failed or refused to remedy any defect, nor has he shown the warranty failed of its essential purpose such that he was not required to satisfy this requirement.  Thus, Defendant's Motion to Dismiss is **GRANTED** on this ground.

### a. The Oil Consumption Defect is Properly Characterized as a Design Defect.

As an initial matter, the Oil Consumption Defect is properly characterized as a design, rather than manufacturing, defect.  A manufacturing defect occurs when a manufacturer constructs a single product in a substandard manner, generally resulting in a deviation from the manufacturer's intended result or from other seemingly identical products.  See, e.g., Wheeler v. Novartis Pharmaceuticals Corp., No. 111-CV-211, 944 F. Supp. 2d 1344, 1352-53 (S.D. Ga. May 15, 2013).  A design defect, however, occurs when a manufacturer builds a product exactly how it was designed, but

workmanship.'").  For simplicity's sake, the Court will refer to this type of defect as a "manufacturing defect" in this order.

the design itself is defective.  See Davidson v. Apple, Inc., No. 16-CV-4942, 2017 WL 3149305, at *21 (N.D. Cal. July 25, 2017). Simply put, where all vehicles are alleged to have the same defect, plaintiffs allege a design defect—not a manufacturing or material defect. Tucker v. Gen. Motors LLC, No. 1:20-CV-254-SNLJ, 2021 WL 2665761, at *2 (E.D. Mo. June 29, 2021).

Here, all of Plaintiff's allegations go to the Gen IV Engine's initial design, which Plaintiff alleges is problematic across all Class Vehicles.  Indeed, Plaintiff even alleges that the Oil Consumption Defect is "an inherent defect in each of the Class Vehicles."  Dkt. No. 1 ¶ 7.  Plaintiff also frequently refers to the subject defect as relating to Defendant's design.  See id. ¶ 115 (referring to "design flaws" which Defendant attempted to "redesign"), ¶ 276 (claiming the engines are "designed so as to prematurely consume an abnormally large amount of oil"), ¶ 277 (alleging GM "failed to rectify the situation and/or disclose the defective design").  Accordingly, Plaintiff's complaint and the referenced authority make clear that the Oil Consumption Defect is properly characterized as a design defect.

### b. The Express Warranty Covers Design Defects

Plaintiff argues that the express warranty's plain language here covers the Oil Consumption Defect even if it is a design defect.  Dkt. No. 30 at 5.  The relevant provision states that the warranty "covers repairs to correct any vehicle defect, not slight

noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period." Dkt. No. 1 ¶ 221. This warranty language has already been analyzed by a number of courts, with some adopting Plaintiff's proposed meaning and others adopting Defendant's proposed meaning. A recent opinion from the District of Oregon aptly explained the parties' disagreement:

> Plaintiff argues that the text of this clause includes, as it expressly states, "any vehicle defect" except for "slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period." Under Plaintiff's reading, the phrase "related to materials or workmanship" modifies the "normal characteristics of the vehicle" that are excluded from coverage, and "slight noise" and "vibrations" are two examples of such "normal characteristics of the vehicle related to materials or workmanship." Because the Oil Consumption Defect is not a normal characteristic of the vehicle related to materials or workmanship, similar to slight noise or vibrations, Plaintiff argues, that alleged defect is covered by the express warranty and not excluded.

> [Defendant], however, argues that "related to materials or workmanship" does not apply to the phrase or list immediately preceding that phrase, but instead modifies "any vehicle defect." Under this reading, the clause would still exempt "slight noise, vibrations, and other normal characteristics of the vehicle" but the phrase "related to materials or workmanship" would not be read as limited to the modification of those items. [Defendant] argues that to read the warranty as Plaintiff contends would conflict with what a reasonable consumer would expect an express warranty to cover, that punctuation should not be considered when interpreting a contract, that [Defendant]'s reading has been adopted by most courts considering [Defendant]'s various express warranties, and that Plaintiff's reading causes the warranty to extend indefinitely.

<u>Martell v. General Motors</u>, 537 F. Supp.3d 1192, 1200 (D. Or. May 7, 2021). Simply put, put, the proposed interpretations have the effect of reading as follows.

According to Plaintiff:

> The warranty "covers repairs to correct *any vehicle defect*."

> This does not include "slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship."

According to Defendant:

> The warranty only "covers repairs to correct *any vehicle defect...related to materials or workmanship occurring during the warranty period*."

> It does not cover "slight noise, vibrations, or other normal characteristics of the vehicle."

The Court in <u>Martell</u> went on to endorse Plaintiff's reading of the limited warranty, concluding "that the phrase 'related to materials or workmanship' modifies the phrase 'other normal characteristics of the vehicle' or, possibly, the longer phrase 'slight noise, vibrations, or other normal characteristics of the vehicle.'" <u>Id.</u> at 1201. This Court agrees. A plain reading of the warranty demonstrates that it covers "repairs to correct any vehicle defect" and *not* "slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship." As such, the warranty covers design defects.

This reading of the express warranty follows Florida contract interpretation principles. "Under Florida law, a written warranty

is treated as a contract between buyer and seller[.]" David v. Am. Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1318 (S.D. Fla. 2009). "[C]ontract interpretation begins with plain meaning of words used, and words are to be given their natural, ordinary meaning." Hirsch v. Jupiter Golf Club LLC, 232 F. Supp. 3d 1243, 1251 (S.D. Fla. 2017). Defendant's reading of this sentence would require the Court to insert another comma after "vehicle" and create an offsetting clause that currently does not exist.

To be sure, other courts have rejected the Martell approach and adopted Defendant's interpretation. See, e.g., Szep v. Gen. Motors LLC, 491 F. Supp. 3d 280, 291-92 (N.D. Ohio 2020); Harris v. Gen. Motors LLC, No. C20-257, 2020 WL 5231198, at *3 (W.D. Wash. Sept. 2, 2020), vacated on other grounds by 2020 WL 10692982 (W.D. Wash. Oct. 19, 2020); Sloan, 2017 WL 3283998, at *8.

However, every court that has analyzed the warranty's construction has adopted Plaintiff's reading. For instance, the court in Tucker adopted Plaintiff's construction after discussing the plain language of the provision, concluding that "the warranty as written may cover plaintiffs' alleged Oil Consumption Defect because the warranty covers 'any vehicle defect,' and the exclusions do not apply here." 2021 WL 2665761, at *4. Moreover, two courts applying Florida law have both endorsed Plaintiff's reading. See McKee v. Gen. Motors, LLC, 376 F. Supp. 3d 751, 757 (E.D. Mich. 2019) ("[Defendant's] argument is inconsistent with

20

the Warranty's plain language."); Weiss v. Gen. Motors LLC, 418 F. Supp. 3d 1173, 1182 (S.D. Fla. 2019) ("[Defendant's] reading of this sentence would require the Court to insert another comma after 'vehicle'. . . [t]he Court will not adopt such a strained reading of the [Warranty's] plain language.").

Defendant's concern that this reading would leave the warranty permanently open to claims no matter when they originate is without merit. As Defendant notes, other language in the warranty imposes clear time and mileage limitations for coverage. See Dkt. No. 41 at 4. As such, the Court is not persuaded that adopting Plaintiff's construction would extend the warranty indefinitely. See Martell, 2021 WL 1840759, at *9; Tucker, 2021 WL 2665761, at *4 (same).

Notably, Defendant points to other provisions of the warranty that support Plaintiff's construction. See Dkt. No. 41-1 at 7, 17, 26. "Under Florida law, a contract should not 'be read so as to make one section superfluous, and so [a]ll the various provisions of a contract must be so construed . . . as to give effect to each,' i.e., not 'interpreted in such a way as to render a provision meaningless[.]'" Port Consol., Inc. v. Int'l Ins. Co. of Hannover, PLC, 826 F. App'x 822, 827 (11th Cir. 2020). "'[T]he legal effect of [a contract's] provisions should be determined from the words of the entire contract,' and that construction must give 'effect to all of the provisions of the contract.'" Slam

Dunk I, LLC v. Conn. Gen. Life Ins. Co., No. 20-13706, 2021 WL
1575162, at *3 (11th Cir. Apr. 22, 2021) (emphasis omitted)
(quoting Summitbridge Credit Invs. III, LLC v. Carlyle Beach, LLC,
218 So.3d 486, 489 (Fla. 4th DCA 2017)).

Other parts of the warranty clearly state that material or
workmanship is covered by the new limited warranty. See, e.g.,
Dkt. No. 41-1 at 7 ("[D]efects in material or workmanship continue
to be covered under the New Vehicle Limited Warranty Bumper-to-
Bumper coverage"), 17 ("The New Vehicle Limited Warranty only
covers components when replacement or repair of these components
is the result of a defect in material or workmanship"), 26 ("Retain
receipts covering performance of regular maintenance. Receipts can
be very important if a question arises as to whether a malfunction
is caused by lack of maintenance or a defect in material or
workmanship."). Thus, Plaintiff's reading (suggesting material or
workmanship is excluded) would be in direct conflict with other
provisions of the Warranty. However, it must be noted that these
other provisions do not necessarily show that "materials or
workmanship" are the *only* defects covered under the warranty.
Thus, they do not overcome the plain text reading of the warranty.

Finally, to the extent there is ambiguity in the warranty, it
must be construed against the drafter in favor of interpreting the
warranty as covering the design defects alleged here. See Tucker,
2021 WL 2665761, at *4 (citing Marion v. Hazelwood Farms Bakeries,

Inc., 969 F. Supp. 540, 540 (E.D. Mo. 1997)). As such, the warranty applies to design defects, and Plaintiff thus must show an attempt to seek repairs in order to state a claim of breach of express warranty.

### c. Plaintiff Does Not Allege an Attempt to Seek Repairs

Even so, Plaintiff faces a fatal issue with his complaint: he does not allege he sought or was denied repairs for any alleged defect during the warranty period and, thus, cannot proceed on his express warranty claim. Normally, under Florida law "a warrantee [] must allege and prove that [the defendant] refused or failed to adequately repair a covered item." Ocana v. Ford Motor Co., 992 So. 2d 319, 324 (Fla. Dist. Ct. App. 2008). Accordingly, an "express warranty claim [is] properly dismissed [where] plaintiff[] fail[s] to allege that [he] ever presented [his] vehicle[] to [the] dealership for repair or that the [] dealership failed to make the repair." Brisson v. Ford Motor Co., 349 F. App'x 433, 434 (11th Cir. 2009); see also In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig., MDL No. 1718, 2007 WL 2421480, at *7 (E.D. Mich. Aug. 24, 2007) (dismissing Florida plaintiffs' breach of warranty claims for failure to allege that they sought service or actually incurred any problems within the durational limits specified in their warranties).

Plaintiff concedes that he did not seek repairs during the warranty term but insists that his claim can still proceed because

23

the limited repair remedy fails of its essential purpose. Dkt. No. 30 at 8.  A "limited remedy fails of its essential purpose where it deprives a purchaser of the 'substantial benefit of the bargain.'"  Barnext Offshore Ltd. v. Ferretti Grp. USA, Inc., No. 10-23869, 2011 WL 13223746, at *10 (S.D. Fla. May 16, 2011) (quoting Curragh Queensland Min. Ltd. V. Dresser Indus., Inc., 55 P.3d 235, 241 (Colo. App. 2002)).  When a limited remedy fails of its essential purpose, the limited remedy will be stricken and a consumer can proceed with a claim for damages.  Fla. Stat. § 672.719(2).  "To meet its pleading burden, a party must only 'make some allegations of fact, that if taken as true, suggest that defendant's limited remedies were inadequate and failed of their essential purpose.'"  Barnext Offshore, 2011 WL 13223746, at *10 (alterations accepted).  Plaintiff submits two reasons that the warranty here fails of its essential purpose.

First, Plaintiff argues that he could not have discovered the defect during the warranty period because it only becomes prominent and noticeable over time.  Dkt. No. 30 at 9.  Plaintiff cites to Barnext Offshore and its cited caselaw for the proposition that "when defects in the goods are latent and not discoverable on reasonable inspection," a warranty may fail of its essential purpose.  2011 WL 13223746, at *10 (quoting Marr Enters., Inc. v.

24

Lewis Refrigeration Co., 556 F.2d 951 955 (9th Cir. 1977)).[7] However, this general statement of law does not mean that "a repair and replacement limited warranty fails of its essential purpose merely because a defect is latent," and no Florida courts have ruled that way. PB Property Mgmt., Inc. v. Goodman Mfg. Co., No. 3:12-CV-1366-HES-JBT, 2014 WL 12640371 (M.D. Fla. Aug. 13, 2014). For a warranty to fail of its essential purpose, it must be that the seller will not or cannot cure a defect within the warranty period. See Parsons v. Motor Homes of Am., Inc., 465 So. 2d 1285, 1292 (Fla. DCA 1985). Where a limited remedy's time limitation is too short to discover the latent defect, on the other hand, the issue becomes whether the warranty was too short, rather than whether the warranty itself failed of its essential purpose.

Here, Plaintiff alleges the defect was latent—piston rings which are hidden inside the engine—and not discoverable upon reasonable inspection, as GM never expects a customer to change piston rings for oil consumption. Dkt. No. 1 ¶ 48. However, this does not demonstrate that the warranty failed of its essential purpose. Rather, this argument simply complains that the warranty period is too short. Complaining the defect was latent amounts to complaining it is harder for a customer to discover the defect

---

[7] As noted in Barnext Offshore, some jurisdictions do not follow this line of reasoning, but there are no cited cases in Florida or the Eleventh Circuit which purport to reject it. See 2011 WL 13223746, at *10 n.17 (citing Baptist Mem'l Hosp. v. Argo Const. Corp., 308 S.W. 3d 337, 349-50 (Tenn. Ct. App. 2009)).

within the allotted warranty period, not that the warranty itself failed of its essential purpose.  See 1 White, Summers, & Hillman, Uniform Commercial Code § 13:20 (6th ed.) (further discussing the issue).  As such, this argument is without merit.

Second, Plaintiff points to other consumers' experience with ineffective repairs.  Specifically, Plaintiff alleges that when other unidentified consumers sought repairs for the Oil Consumption Defect, Defendant instructed its service centers to perform a series of "band-aid" fixes that Defendant knew to be ineffective.  However, the law is clear that Plaintiff must allege the warrantor had an opportunity to repair the alleged defect in its product and failed to do so.  See PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P., No. 12-cv-1366, 2014 WL 1260371, at *6 (M.D. Fla. Aug. 14, 2014).  Allegations that repairs to *other* consumers' vehicles were insufficient is inapposite to whether repairs to *Plaintiff's* vehicle would fix the defect, especially since Plaintiff does not allege that he was aware of the failed repairs to other consumers' vehicles.  Even Plaintiff's cited supplemental authority found this issue fatal to a plaintiff's claim of breach of express warranty.  See Dkt. No. 49 at 27 (citing Heater v Gen. Motors, LLC, No. 1:21-CV-24, 2021 WL 4896546, *7 (N.D. W. Va. Oct. 20, 2021)).  As such, Plaintiff's claim does not satisfy the repair requirement, and Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's breach of express warranty claim.

### III.   Fraudulent concealment/omission (Count III)

Defendant next seeks to dismiss Count III of Plaintiff's complaint, arguing that Florida's economic loss doctrine bars Plaintiff's state law fraud claim because he seeks only economic damages and alleges no personal injury or property damage.  Dkt. No. 14 at 8.  Plaintiff argues that even though the economic loss doctrine does apply, his claim falls within a narrow exception because of Defendant's alleged fraudulent acts.  Dkt. No. 30 at 11.  Caselaw shows the Florida Supreme Court clearly intended to quash the exceptions to the economic loss doctrine in the products liability context, so Defendant's Motion to Dismiss is **GRANTED** on this ground as well.

"Simply put, the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."  Tiara Condo. Ass'n v. Marsh & McLennan Co., 110 So. 3d 399, 401 (Fla. 2013).  The doctrine preserves "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others."  Id. (quoting Casa Clara Condo. Ass'n, Inc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244, 1246 (Fla. 1993)).  It recognizes that "[w]hen the parties are in [contractual] privity, contract principles are generally more

appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement." Id. at 402.

But there are exceptions. In Tiara, the Florida Supreme Court confirmed that "fraudulent inducement, and negligent misrepresentation, or free-standing statutory causes of action" are not subject to the rule. 110 So. 3d at 406. Importantly, however, the fraudulent inducement and negligent misrepresentation cases the Tiara court cited are outside of the products liability context. Id. at 406, n.7 (citing HTP, Ltd. V. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996) (fraudulent inducement in a settlement agreement)), n.8 (citing PK Ventures, Inc. v. Raymond James & Assocs., 690 So. 2d 1296 (Fla. 1997) (negligent misrepresentation in the sale of residential property)). When the cause of action sounds in products liability, several courts have held that the Florida economic-loss doctrine bars claims such as fraudulent concealment. Vazquez, 2018 WL 447644, at *6 ("Fraudulent concealment claims in the products liability sphere that seek to recover only economic damages are clearly barred by Florida's economic loss rule."); Pinion v. Daimler AG, No. 1:18-CV-3984-MHC, 2019 WL 11648560, at *15 (N.D. Ga. Nov. 4, 2019) (noting that several district courts in the Eleventh Circuit "have concluded that Florida's Supreme Court did not intend to allow such products liability claims to survive"

(listing cases)); Burns v. Winnebago Indus., Inc., No. 8:13-cv-1427, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013) (finding that holding otherwise would allow purchasers to manipulate the economic loss rule whenever they received a defective product that did not cause any injuries or damage to other property).

Here, Plaintiff's claims stem from design defects in the Class Vehicles, so Plaintiff's allegations of fraud sound in products liability.  Because the relevant representations are certainly related to the Defendants' obligation under the contract, the economic loss doctrine applies to bar Plaintiff's claim of fraudulent omission/concealment.  As such, Defendant's Motion to Dismiss is **GRANTED** on this ground.

### IV.   Count IV — Unjust Enrichment

Defendant next moves to dismiss Count IV of Plaintiff's complaint, arguing that such a claim cannot be brought because an express contract governs the subject matter of the dispute.  Dkt. No. 14 at 16.  Plaintiff acknowledges the express contract but insists that he is pleading his unjust enrichment claim in the alternative.  Dkt. No. 30 at 19.  As such, the question is whether the existence of an express contract bars pleading an unjust enrichment claim in the alternative.

"It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy."  Am. Honda Motor Co., Inc. v. Motorcycle

Info. Network, Inc., 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). Thus, "[n]o cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract." Zarrella v. Pac. Life Ins. Co., 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010). Therefore, "an unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute." Vazquez, 2018 WL 447644, at *7 (quoting Zarrella v. Pacific Life Ins. Co., 766 F. Supp.2d 1218, 1227 (S.D. Fla. 2010)).

Here, both parties seem to acknowledge that an express contract exists and governs the Class Vehicles disputes. Dkt. No. 14 at 16; Dkt. No. 30 at 19. Whether Defendant ultimately breached its warranty or not is not dispositive of the existence of an express contract. Indeed, the Court in Vazquez discussed this exact issue in a related circumstance and held the plaintiff could not plead unjust enrichment in the alternative:

> Plaintiffs argue that in refusing to recognize that the warranty covers design defects, GM is contesting the existence of an express contract governing the subject of the dispute. The Court sees just the opposite: GM argues that an express contract governs and that because the contract has not been breached, Plaintiffs are not entitled to recover.
>
> Because there is an express warranty governing the subject matter at issue here, Plaintiffs' unjust enrichment claims must be dismissed.

Id. As such, Plaintiff is barred from pleading unjust enrichment in the alternative. Indeed, the case to which Plaintiff cites in

support of alternative pleading, FP Augusta II, LLC v. Core Construction Services, LLC, No. CV 119-048, 2019 WL 6733030, at *2 (S.D. Ga. Dec. 10, 2019), actually supports Defendant's position. It states: "[C]ourts have found that when a claim for equitable relief reincorporates an allegation that a contract exists, the acknowledgment of the contract causes the equitable claim to fail because in such cases there is no dispute as to the existence of a contract." Id. As such, Defendant's motion is **GRANTED** as to Plaintiff's unjust enrichment claim.

### V.   Count V — Magnuson-Moss Warranty Act

Finally, in Count V, Plaintiff brings a claim alleging a violation of the Magnuson-Moss Warranty Act ("MMWA"). State law governs claims brought pursuant to the MMWA. That is, "claims under the Magnuson–Moss Act stand or fall with [a plaintiff's] express and implied warranty claims under state law." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008); see also Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1231 (11th Cir. 2016). Here, Plaintiff's MMWA claim is premised on the express written limited warranty. Dkt. No. 1 ¶¶ 273-74. Because Plaintiff's claim for breach of express warranty is due to be dismissed, his MMWA claim must be **DISMISSED without prejudice**.[8]

---

[8] Because this Court is dismissing Plaintiff's MMWA claim, the Court need not decide whether Plaintiff has satisfied the statutory prerequisite necessary for a class-wide claim under the MMWA.

**CONCLUSION**

For the above stated reasons, Defendant's Motion to Dismiss, dkt. no. 14, is **DENIED in part** and **GRANTED in part**.  The Motion is **DENIED** as to Count I and **GRANTED** as to Counts II-V.

**SO ORDERED** this 28th day of January, 2022.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA